FILED
2015 Apr-07  AM 10:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| SUBRENA TODD, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 1:14-CV-1385-VEH** |
| | ) |
| RAJENDRA KUMAR D. PATEL, | ) |
| | ) |
|     **Defendant.** | ) |

---

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

This case arises under Title III of the Americans With Disabilities Act ("ADA" or the "Act"). (Doc. 1 at 1 ¶ 1). As a result of the pro tanto dismissal of Defendant Integrity, LLC ("Integrity") on January 15, 2015 (Doc. 31),[1] only one defendant remains in the case–Rajendra Kumar D. Patel ("Mr. Patel").

Pending before the court is Plaintiff Subrena Todd's ("Ms. Todd") Verified Motion for Default Judgment (Doc. 32) (the "Motion") against Mr. Patel filed on

---

[1] By order dated October 21, 2014, Integrity, LLC, was substituted for Kellie Subs, LLC. (Doc. 23). Accordingly, whenever the plaintiff referred, in her complaint, to "Kellie Subs, LLC," the court has substituted "Integrity, LLC."

February 3, 2015.[2] The Motion seeks injunctive relief only, requests that the court retain jurisdiction to award attorney's fees and costs (Doc. 32 at 5), and attaches a proposed default judgment. (Doc. 32-1). For the reasons discussed below, the Motion is due to be denied without prejudice.

## II.   STANDARD ON DEFAULT JUDGMENT

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  Fed. R. Civ. P. 55(a). However, entry of default under Rule 55(a) does not entitle a party to his requested relief. Either the clerk or the court must enter a default judgment under Rule 55(b). Here, Ms. Todd asks the court, and not the clerk, to act pursuant to Rule 55(b)(2).

Generally, the entry of a default judgment is committed to the discretion of the district judge. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).[3] The factual allegations of a well-pleaded complaint are taken as true; hence, the court must decide

---

[2]  The Motion is verified by Ms. Todd's counsel and not Ms. Todd. (Doc. 32 at 6). The complaint is not verified. (Doc. 1).

[3]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

if these accepted facts state a cause of action for which relief can be granted. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1987); *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("There must be a sufficient basis in the pleadings for the judgment entered.") (footnote omitted); *Descent v. Kolitsidas,* 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) (same). When the amount of damages due is uncertain, an evidentiary hearing is often required to determine the sum the defaulting defendant must pay. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231-32 (11th Cir. 2005). On the other hand, if a specific or, such as here, no sum is sought, a hearing may not be necessary.

As explained by Judge William H. Steele of the United States District Court for the Southern District of Alabama regarding default judgments:

> The law is clear, however, that Lacey's failure to appear and the Clerk's subsequent entry of default against her do not automatically entitle plaintiffs to a default judgment. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports*, *Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); *see also Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); *GMAC Commercial Mortg. Corp. v. Maitland Hotel Associates, Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (default judgment is appropriate only if court finds sufficient basis in pleadings for judgment to be entered, and that complaint states a claim). Stated differently, "a default

judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).

*Virgin Records America, Inc. v. Lacey*, 510 F. Supp. 2d 588, 591-92 (S.D. Ala. 2007) (emphasis added).

## III.   PROCEDURAL HISTORY AND STATEMENT OF FACTS

On July 18, 2014, Ms. Todd initiated this ADA case.  (Doc. 1). On October 27, 2014, the clerk entered a default against Mr. Patel (Doc. 26) pursuant to Rule 55(a) of the Federal Rule of Civil Procedure due to his failure to answer or otherwise respond to Ms. Todd's complaint after having been duly served with it on September 11, 2014. (Doc. 19).

The complaint alleges that Ms. Todd is bound to a wheelchair and suffers from what constitutes a "qualified disability" under the ADA as she is limited in the major life activity of walking and "in the exercise of normal bodily functions." (Doc. 1 at 2 ¶ 3). Ms. Todd states that she, "on numerous occasions within the applicable statutes of limitations period" (Doc. 1 at 4 ¶ 10) has "personally visited SUBWAY in Childersburg, Alabama, but was denied full and equal access to, and full and equal enjoyment of, the facilities within and about SUBWAY, which is the subject of this lawsuit." (Doc. 1 at 2 ¶ 3).

Ms. Todd explains that she lives in Talladega County, where the SUBWAY is

4

located, and that she "frequently travels to th[at] [particular] area" because the
SUBWAY's location is "along the most direct route to [her] [d]octor's medical
treatment offices." (Doc. 1 at 5 ¶ 11). She also "continues to desire to and has definite
plans" to return to the SUBWAY in the future, but is hampered by the discriminatory
"barriers to access that remain" there. (*Id.* at 5 ¶ 12).

Ms. Todd further asserts that Integrity is the lessee and operator of the
SUBWAY (Doc. 1 at 2 ¶ 4), and that Mr. Patel is "the owner and lessor of the real
property where the [SUBWAY] is located . . . [and] wh[o] also maintains and controls
the subject property." (*Id.* at 3 ¶ 4).

The pleading additionally states that "SUBWAY is a place of public
accommodation in that [Integrity] operates a sandwich shop which provides food and
beverages to the public." (*Id.* at 4 ¶ 7). Ms. Todd similarly contends that the building
housing the SUBWAY "is a public accommodation covered by the ADA and which
must be in compliance therewith." (*Id.* at 4 ¶ 8).

The complaint contains only one count asserted against the defendants
collectively and alleges the following specific Title III violations of the ADA:

   a.   Failure to provide adequately compliant parking spaces within the
        parking lot which meet the requirements of accessible parking
        under the ADA, including but not limited to failing to:

        i.   provide properly designated accessible parking

spaces with the requisite access aisles marked as such so as to discourage parking in them[;]

    ii.    provide upright accessible parking space signage at least 60 inches above the ground identifying accessible spaces are provided by displaying the International Symbol of Accessibility[; and]

    iii.    provide a van accessible parking space and access aisle, and proper signage designating van accessible parking spaces.

b.    Failure to provide a clear and unobstructed designated accessible path of travel from the existing parking spaces, marked as such, designated for wheelchair users to enter the [SUBWAY].

c.    Failure to provide an accessible ramp along an accessible paty of travel from the existing parking spaces to the nearest accessible entrance.

d.    The existing ramp along the side entrance at the [SUBWAY] fails to comply with the designated allowances for ramp slopes and flares.

e.    Failure to provide signage at the inaccessible entrance(s) indicating the location of the nearest accessible entrance.

f.    Failure to provide adequate ADA compliant directional and accurate informational signage within the [SUBWAY].

g.    Failure to construct and/or modify restrooms for accessibility, including failing to:

    i.    provide signage at the restroom doors indicating the availability of accessible accommodations provided within[;]

      ii.     provide flush controls mounted on the open side of the water closets[;]

      iii.     provide accessible controls for the paper towel dispensers within the requisite reach ranges[;]

      iv.     provide accessible controls for the soap dispensers within the requisite reach ranges based on their position over an obstruction, i.e., the lavatories[; and]

      v.     provide rear grab bars above the water closets along the rear wall.

(Doc. 1 at 6-8 ¶ 14).

The scope of the default judgment that Ms. Todd wants entered against Mr. Patel is not as broad as the list of public accommodation problems identified in her complaint. (Doc. 32-1). Specifically, she seeks a judgment from this court requiring Mr. Patel to correct the following issues:

**Parking Lot**

      a.     There is no standard accessible parking for persons with disabilities in the parking lot facility in violation of Section 4.6 of the ADAAG.[4]

      b.     There is no van accessible parking for persons with

---

[4] The ADAAG stands for the ADA Accessibility Guidelines, which "are used by the Department of Justice (DOJ) and the Department of Transportation (DOT) in setting enforceable standards that the public must follow." *See* http://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards (last accessed on April 3, 2015).

7

disabilities in the parking lot facility in violation of Section 4.6 of the ADAAG.

c. There are no designated access aisles adjacent to standard accessible spaces measuring 60 inches wide minimum in violation of Section 4.6 of the ADAAG.

d. There are no accessible spaces marked with the International Symbol of Accessibility in violation of Section 4.6 of the ADAAG.

**Ramp**

e. The existing ramp at the facility is located on the side of the building at the secondary entrance and is not provided along an accessible route from the existing parking spaces at the designated accessible entrance in violation of Section 4.3 of the ADAAG.

f. The existing ramp at the facility exceeds the maximum cross slope in violation of Section 4.3.7 of the ADAAG.

g. The existing ramp at the facility lacks edge protection in violation of Section 4.8.7 of the ADAAG.

**Exterior Route/Entrance**

h. The side entrance of the facility which is not an element of the accessible route lacks directional signage indicating the direction and location of the accessible entrance in violation of Section 4.30.

(Doc. 32-1 at 2-3).

Concerning the practicality of these changes, Ms. Todd asserts that "[t]he

8

remediation of barriers and accommodations sought by [her] . . . are readily achievable, technically feasible, and would not result in a significant loss of marketing or sales space to [Mr. Patel]." (Doc. 1 at 8 ¶ 18).

On February 24, 2015, this court entered a show cause order on Ms. Todd's Motion requiring Mr. Patel to explain no later than March 16, 2015, why a default judgment should not be entered against him. (Doc. 33). The court directed the clerk to serve Mr. Patel with a copy of this order via regular and certified mail. (Doc. 33 at 2). Service of that order by certified mail was returned to the court as unclaimed. (Doc. 34). To date, Mr. Patel has filed no response to the show cause order.

## IV.   ANALYSIS

Upon reviewing the complaint, the court concludes that there is a legal basis for awarding the injunctive relief against Mr. Patel by default under the ADA as requested by Ms. Todd in her Motion. However, because her complaint lacks any allegations about any contractual allocation of barrier removal responsibility between Integrity, the tenant, and Mr. Patel, the landlord, and her Motion similarly lacks any discussion about an appropriate division or whether both can be held jointly responsible for remedial work under Title III, the court requires further development of the record before entering the type of injunctive order proposed by Ms. Todd.

### A.   General Public Accommodation Principles

42 U.S.C. § 12182(a) prohibits disability discrimination with respect to public accommodations and provides:

(a) General rule

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). In sum, "Title III is meant to prevent owners of public places of accommodation from creating barriers that would restrict a disabled person's ability to enjoy the defendant entity's goods, services, and privileges." *Morgan v. Christensen*, 582 F. App'x 806, 809 (11th Cir. 2014) (citing *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1283 (11th Cir. 2002)).

Ms. Todd's suit focuses on Title III's so-called "tangible barriers" of discrimination as set forth in § 12182(b)(2)(A)(iv). *See Rendon*, 294 F.3d at 1283 ("A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers . . . tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, *see* 42 U.S.C. § 12182(b)(2)(A)(iv), and . . . ." (footnote omitted)).

As the ADA specifically describes its prohibition against the existence of

10

tangible barriers:

> a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable[.]

42 U.S.C. § 12182(b)(2)(A)(iv).

### B.   Ms. Todd Has Standing To Pursue Injunctive Relief Under Title III of the ADA.

Turning to the issue of standing first, the court determines that the allegations of Ms. Todd's complaint are sufficiently concrete for her to obtain "injunctive relief for violations of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(iv) of the ADA's Title III." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336-37 (11th Cir. 2013). Further, "[t]here is no indication in the record that the alleged architectural barriers in the [SUBWAY] have been remedied. As a result, there is a 100 percent likelihood that [Ms. Todd] will suffer the alleged injury again when [s]he returns to the store." *Houston*, 733 F.3d at 1337. Additionally, there is no indication that "the likelihood of [Ms. Todd] suffering future injury . . . is . . . contingent upon events that are speculative or beyond h[er] control." *Id.* "Rather, the cause of the injury continues to exist, and the likelihood of [Ms. Todd] encountering that cause in the future depends

11

only on [her] own volition[,]" *i.e.*, her returning to the SUBWAY. *Id.*

### C.   Ms. Todd Needs To Better Develop Her Claim for Injunctive Relief Asserted Against Mr. Patel.

The court next addresses whether the Act applies to Mr. Patel in his capacity as a landlord. As set forth above, § 12182(a) parenthetically includes "leases" within its scope which from a plain language standpoint confirms that, as a general matter, Title III of the ADA covers landlords. As one court has explained the ADA's public accommodation provision's impact on lessors, like Mr. Patel, "a landlord must comply with the public accommodation requirements of the ADA (and cannot avoid ADA compliance merely by leasing a public accommodation) . . . . A landlord incurs liability only if the landlord implements a discriminatory policy, practice, or procedure." *Haynes v. Wilder Corp. of Delaware*, 721 F. Supp. 2d 1218, 1228 (M.D. Fla. 2010).

However, how the Title III remedial responsibility is divided between a landlord and a tenant, who are both connected to a non-compliant place of public accommodation, is less clear. The Act does not address allocation at all. The applicable regulations provide some guidance:

> Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, <u>allocation of responsibility for complying with the obligations</u>

12

of this part may be determined by lease or other contract.

28 C.F.R. § 36.201(b) (emphasis added).

Here, Ms. Todd's complaint is completely silent about any lease between Integrity and Mr. Patel and whether that contract includes a provision which directly clarifies which party bears the responsibility for ensuring ADA Title III compliance or whether the agreement has a more generalized "compliance-with-law" provision. *See, e.g.*, Karen E. Field, Note, *The Americans with Disabilities Act "Readily Achievable" Requirement for Barrier Removal: A Proposal for the Allocation of Responsibility Between Landlord and Tenant*, 15 Cardozo L. Rev. 569, 583 (1993) (hereinafter "Note") ("[A]lthough the Proposed Rule addressed situations in which a lease allows the tenant to make alterations with the landlord's permission, it failed to consider the ramifications of a 'compliance-with-law' provision, which allocates responsibility to a particular party for compliance with all relevant federal, state, and local laws." Additionally, Ms. Todd's complaint does not indicate whether the lease has an alterations provision.

Alternatively, assuming that no contractual language exists that would shed light as to the degree in which Mr. Patel or Integrity should bear the ADA public accommodation burden, Ms. Todd's Motion fails to offer any legal framework for how this court should fashion an equitable division between a landlord and a tenant

13

under Title III of the ADA.[5] For example, while the court can readily envision why Mr. Patel should be responsible for making the parking lot ADA-compliant as part of a common area approach to allocating the burden, the court, in the absence of any persuasive case authority, has some concerns about whether Mr. Patel should be ordered to make changes to the exterior route/entrance of the SUBWAY as that area is likely part of Integrity's leased premises. *See, e.g.*, Note, 15 Cardozo L. Rev. at 584 ("For example, the landlord is generally deemed to be responsible for the common areas and the tenant for his own premises."). In any event, because Ms. Todd is seeking such a wide array of ADA modifications by way of an injunction, the court is uncomfortable with holding Mr. Patel (despite his default) responsible for all of them, without a record that has been developed more definitely as to her entitlement to such a multi-faceted judgment against him.

## IV.   CONCLUSION

Accordingly, Ms. Todd's Motion is **DENIED WITHOUT PREJUDICE** to her right to reseek a default judgment against Mr. Patel on a more developed record as described above.

---

[5] The court's own research has not uncovered any binding Eleventh Circuit standard.

**DONE** and **ORDERED** this 7th day of April, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge